Christopher DENNIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–94–00040–CR.

Court of Appeals of Texas, Tyler.

Oct. 31, 1995.

HOLCOMB, Justice.

The jury found Christopher Dennis guilty of aggravated robbery, and the court assessed his punishment at forty years in prison. In his first four points of error, Dennis contends that the trial court erred when it: (1) failed to properly apply the law of parties; (2) allowed the State to use a peremptory strike in a racially discriminatory manner; (3) admitted a video tape into evidence that showed him restrained in handcuffs; and (4) allowed him to be impeached with statements that he had previously made during a plea in federal court. Dennis also challenges the sufficiency of the evidence to support his conviction. We will affirm.

On September 7, 1993, Dennis, Demetrick Woods, Roderick Demon McGee, Kevin Hill, and Jeff Murray drove from Athens to Tyler in a Cadillac. While driving around Tyler, they noticed a Nissan pickup parked in the Albertson parking lot. The truck belonged to Kensley Robinson, a student at Tyler Junior College, who was working as a bag boy at Albertson's. At approximately 7:00 p.m., Robinson started to get into his truck to leave and noticed the Cadillac pull up next to his truck. Someone from the passenger side of the car grabbed Robinson by the shirt, struck him several times with a pistol, took his wallet and told him to keep his head down or he would be killed. Seconds later, Dennis got behind the steering wheel of Robinson's truck, and Robinson was forced at gunpoint to ride with Dennis and McGee. While Robinson was in the pickup, McGee struck Robinson repeatedly and threatened to kill him if he later identified McGee. According to Robinson, Dennis told McGee not to kill him because he "was not worth it."

Milton and Connie Moore were approximately thirty feet away from Robinson's truck in the Albertson parking lot and witnessed the "car-jacking". They followed Robinson's truck out of the parking lot and

called 911 on Connie's cellular phone. A police car responded to Connie's call and pulled the truck over on a road near the LaQuinta Inn. As soon as the truck came to a stop, Dennis and McGee fled. The officer followed McGee and eventually apprehended him, but Dennis successfully escaped the scene. Robinson's truck was searched and a gun was found under the driver's side of the pickup.

Renetta Stevens, Dennis' former girlfriend, rode with a friend, Tracy Sims, to pick up Dennis at the LaQuinta Inn and take him to Athens. In Athens, Blake Moore, an officer at the Athens Police Department, stopped Sims' vehicle and placed Dennis under arrest.

■ In his second point of error, Dennis challenges the sufficiency of the evidence to support his conviction, a contention we will address first. He does not deny that he robbed Robinson, but merely argues that the evidence is insufficient to prove that he used a weapon, the aggravating element of the offense. Because Dennis was not charged as a party, if the evidence is insufficient to prove that he used or exhibited a weapon during the offense, he would be entitled to an acquittal.

■ The standard for reviewing a sufficiency of the evidence challenge on appeal is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Cr.App.1989); *Jackson v. State,* 672 S.W.2d 801, 804 (Tex.Cr.App.1984). In an effort to undermine the evidence that supported his conviction, Dennis points out that the facts varied on the issue of whether he used a gun. For instance, Jeff Murray, originally a co-defendant, pled guilty and was awaiting sentencing when he testified for the State. Murray admitted that he was in the car with Dennis and McGee on the day that the incident occurred. According to Murray, Dennis was the person who suggested they stop and look at Robinson's truck, but McGee was the only person who had a gun. However-

er, when the police searched Robinson's truck, they found the gun under the driver's side of the vehicle. The evidence is undisputed that Dennis drove Robinson's truck during the car-jacking.

Connie Moore testified that she and her husband, Milton, were in the Albertson parking lot within approximately thirty feet of Robinson's truck when the robbery occurred. Connie observed Dennis go to the door window on the passenger side of the truck with a gun in his hand. She saw another person, who was at the driver's side of the truck, strike Robinson through the window. Connie then stated that the person who was on the passenger side of the truck switched places with the person on the driver's side of the truck. The Moores further testified that when the truck left the parking lot, Robinson was sitting between Dennis and McGee and they continued to beat and push Robinson down into the seat.

Milton Moore largely corroborated his wife's testimony. He testified that he had clearly observed what had happened in the Albertson parking lot and confirmed that the individual, who got out of the pickup on the passenger side, went to the driver's side of Robinson's truck and was carrying an object in his hand. Moore stated that he could not identify the object, but he could see the individual hitting Robinson with it.

Dennis denied that he switched places with McGee, denied that he struck Robinson, and denied that he had ever had the gun in his possession. At trial, he denied knowing that McGee had the gun in Tyler, but his testimony was impeached by prior sworn statement that he had given in a plea in federal court.

■ After reviewing the evidence most favorable to the verdict, we hold that it is sufficient to support Dennis's conviction. Although the evidence is conflicting, evidence which supports a verdict is not rendered insufficient merely because the Appellant presented a different version of events. *Anderson v. State,* 701 S.W.2d 868, 872 (Tex. Cr.App.1985). When faced with conflicting inferences, we must presume that the trier of fact resolved any such conflict in favor of the prosecution and must defer to that resolu-

tion. *Turro v. State,* 867 S.W.2d 43, 47 (Tex. Cr.App.1993). The jury is entitled to reject one version of the facts and accept another. *Johnson v. State,* 673 S.W.2d 190, 196 (Tex. Cr.App.1984). In this case, a rational jury could have found from the evidence that Dennis committed the offense of aggravated robbery by using or exhibiting a deadly weapon. Point of error two is overruled.

■ Next, we will return to Dennis' first point, in which he contends that the court erred when it did not adequately instruct the jury on the "law of parties". The "law of parties" makes one liable for a crime as a party if he promotes, assists, solicits, encourages, directs, or aids the commission of the offense. TEX.PENAL CODE ANN. § 7.02(a)(2) (Vernon 1974). In his written instructions to the jury, the trial judge defined the law of parties:

> A person is criminally responsible for an offense committed by the conduct of another if, acting with the intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids or attempts to aid the other person to commit the offense. Mere presence alone will not constitute one a party to an offense.

The charge which was given to the jury read, in pertinent part, as follows:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 7th of September, 1993, in Smith County, Texas, the Defendant, CHRISTOPHER SHAWN DENNIS, did then and there, intentionally or knowingly, while in the course of committing theft of property or with intent to obtain and maintain control of property, threaten or place Kensley Robinson in fear of imminent bodily injury or death and the said CHRISTOPHER SHAWN DENNIS, did then and there use or exhibit a deadly weapon, to-wit: a firearm, then you will find the Defendant guilty of Aggravated Robbery.

Dennis objected to the court's charge and stated:

1. The abstract charge on the law of parties in the present case was couched after the application paragraph on the charge of aggravated robbery as the primary actor, the definition in the law of

I would ask that there be an application paragraph of the law of parties in the case and I think I would ask that it read: If you find from the evidence beyond a reasonable doubt that on or about the date this offense occurred in this county and state while in the course of committing theft of personal property did intentionally and knowingly place Kensley Robinson in fear of imminent bodily injury or death by exhibiting a deadly weapon, to-wit: a firearm, with intent to obtain it from him. It basically tracks, you know, tracks that language in that Chris Dennis did then and there acting with intent to promote or assist the commission of the offense, if any, aid Roderick McGee to commit the offense, if any, by his own actions in the commission of said offense, if any. Basically kind of adding the application paragraph.

In response to Dennis's request, the court stated:

THE COURT: Talking about the application paragraph as to the law of parties. Where is that in here?

MR. SKEEN: [District Attorney] Judge, the law of parties is further on down in the charge. It starts down at the bottom of page six. It actually just comes—it is sort of down in the boiler plate part. Starts at the bottom of page six, and if he is asking for some type of application to the facts, I submit to the court that it is not required under the law. The court is clearly charging the jury on the law of the parties and that is all that is required. It contains the full law of parties as set out in the Penal Code and culpability of the Defendant on criminal responsibility.[1]

THE COURT: I think it is covered in here. I'm going to overrule that objection.

Dennis argues that the trial judge should have applied the law of parties to the specific facts of the case rather than allowing the jury to find him guilty as a principal. We agree.

■ "A defendant is entitled to have the law of parties applied to the facts of his case

duress, and an application paragraph on the duress defense and after a definition and application of accomplice testimony.

in the jury instruction if there is evidence he acted as a party and the State advances that theory." *Johnson v. State,* 739 S.W.2d 299, 302 (Tex.Cr.App.1987). Even though the evidence in the record supports Dennis' conviction as a principal actor in the offense, there was also evidence that he may have acted as a party to the offense. The court gave an abstract definition on the law of parties, and Dennis properly requested the court to provide the jury with an application paragraph on the law of parties. The court erred when it did not apply the facts in the application paragraph to the law of parties.

However, Dennis is entitled to a reversal only if he was harmed by the court's error. TEX.R.APP.P. 81(b)(2); *Almanza v. State,* 686 S.W.2d 157, 174 (Tex.Cr.App.1984) (on rehearing). In determining whether Dennis was harmed, we review all of the evidence that was admitted at trial in addition to the charge and the arguments of counsel. *Id.* The harm analysis that the Court of Criminal Appeals sets out in *Almanza* specifically addresses the harm that may arise out of a defective charge. *Id.* Harm, or lack of harm, is situation-specific and will vary according to the facts in each case. *Id.* Our review of the cases involving the lack of an application paragraph on the law of parties tends to show that the extent to which the evidence is contradicted, versus the evidence that is uncontradicted, becomes the key focus.

Dennis cites *Ruiz v. State,* 766 S.W.2d 324 (Tex.App.—Houston [14th Dist.] 1989), as authority for his position that reversal is imperative because of the defective jury charge. However, the facts in *Ruiz* are markedly different from the present case. In *Ruiz,* the Appellant was charged with constructive delivery of a controlled substance. *Ruiz v. State,* 766 S.W.2d at 325. From a reading of the facts in that case, the Appellant could have only been found guilty under the law of parties because there was no evidence that the Appellant was a principal actor in the offense. *Id.,* at 332. The Houston Court of Appeals held that the trial court erred when it failed to give the Appellant an application paragraph on the law of parties. *Id.*

In this case, we have reiterated the evidence that supported Dennis' conviction as a principal actor in the offense. In addition to the evidence that was presented, the prosecutor made the following statements to the jury in final argument:

At the very least, he is guilty as a party to the commission of this offense because, as Judge Clayton tells you in the charge on, a little further down in the charge, all persons are parties to the offense who are guilty of acting together in the commission of the offense.

The Judge talks to you about criminal responsibility and tells you a person is criminally responsible for the offense committed by the conduct of another if acting with intent to promote or assist the commission of the offense he solicits, encourages, aids or attempts to aid the commission of the offense.

Now, at the very least in this case, at the very least this Defendant is guilty as a party to the commission of the aggravated robbery of Kensley Robinson.

If you believe Connie Moore's testimony, Connie Moore sees this Defendant initially set up at the passenger side of the door with a gun. There is no question from the testimony of Mr. Moore, Milton Moore, that both those individuals who are up on the side of that pickup are both assaulting the victim but it really doesn't make any difference as far as the guilt of this Defendant to the offense of aggravated robbery as a party.

So you don't have to get that involved in trying to separate exactly who was doing what up by that side of that pickup truck.

. . . . .

You know [Robinson] was being assaulted through the window and you know either Christopher Dennis or Roderick McGee was assaulting him through the window, but it doesn't make any difference as far as his guilt as a party to aggravated robbery which one of them was doing it because at the very least he is directing, aiding, encouraging and assisting the commission of

the aggravated robbery and we've proven all that to you beyond a reasonable doubt.

As we read these statements in connection with the evidence that was presented at trial, the State argued to the jury that Dennis was guilty of the offense, as the primary actor and as a party. Assuming that the court had given Dennis an application paragraph on the law of parties, it would have given the jury the choice of finding Dennis guilty as a principal or as a party. In either event, the evidence of Dennis's guilt is ample, and his guilt is even more incriminating under the law of parties. Under the reasoning of *Todd v. State*, 601 S.W.2d 718 (Tex.Cr.App.1980), *Mauldin v. State*, 628 S.W.2d 793 (Tex.Cr.App.1982), and *Govan v. State*, 682 S.W.2d 567 (Tex.Cr.App.1985), we conclude there was no harm. Therefore, we hold that any error in refusing Dennis' requested charge and failing to properly apply the law of parties was harmless. Point number one is overruled.

 In his third point, Dennis claims that the court erred when it failed to quash the jury panel after the State exercised a peremptory challenge to exclude an African American veniremember, Kathi Pinke, for a racially discriminatory reason in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, (1986). Dennis is black. The state challenged and struck one of the three African Americans that were within the strike zone of the panel. The court found that Dennis had made a *prima facie* case and conducted a *Batson* hearing to determine whether the State had used its peremptory challenge on Pinke for a race-neutral reason.

 A trial court's decision and finding as to whether a reason given by a prosecutor is sufficiently race-neutral is reviewable by a "clearly erroneous standard." *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); *Tennard v. State*, 802 S.W.2d 678, 681 (Tex.Cr.App.1990). We afford great deference to the findings of the trial court. *Robinson v. State*, 851 S.W.2d 216, 226 (Tex.Cr.App.1991). After the trial court determines that a defendant has made a *prima facie* case, the burden shifts to the prosecution to come forward with race-neutral reasons for the peremptory

strike. *Keeton v. State*, 749 S.W.2d 861, 867 (Tex.Cr.App.1988). The explanation the state gives justifying the strike must be a clear, specific, and legitimate explanation for each relevant challenge. *Brooks v. State*, 802 S.W.2d 692, 694 (Tex.Cr.App.1991). A reviewing court is not to concern itself with who served on the jury, but whether the state was racially motivated in using a peremptory challenge against even one veniremember of discernable race. *Linscomb v. State*, 829 S.W.2d 164, 167 (Tex.Cr.App.1992).

Here, the prosecutor testified that Pinke was struck because she was young (twenty-three years old), unmarried, had a short employment history, and had a member of her family with a criminal record. Dennis pointed out that another white, twenty-three year old veniremember, Holt, was not struck from the panel. The prosecutor explained that Holt, unlike Pinke, had an employment history of over four years with one employer. Holt was also employed at the same state agency as one of the state's witnesses and had previously served on a jury panel and returned a verdict of guilty.

Dennis also pointed out that the State did not strike from the venire a thirty-three year old white male named Staples who also stated during voir dire that a member of his family had a criminal record. The prosecutor explained that Staples was older, had a strong employment history as a supervisor, his wife worked, and they had children.

 After reviewing the record of voir dire, we hold that the court did not err when it denied Dennis' motion to quash the jury panel. Evaluation of a prosecutor's state of mind based on demeanor and credibility lies peculiarly within a trial court's province. *Newsome v. State*, 829 S.W.2d 260, 266 (Tex.App.—Dallas 1992, pet. ref'd). Trial judges are experienced in supervising voir dire examinations and are capable of judging the credibility of the prosecutor, who practices frequently in their courtroom. *Id.* Thus, the court is in a unique situation to observe the context of the prosecutor's explanation of the state's strikes in light of the surrounding facts and circumstances that occur during voir dire. *Id.* The judge cannot

merely accept the specific reasons given by the prosecutor at face value, but must consider whether the prosecutor contrived the racially neutral explanations to avoid admitting acts of discrimination. The judge must make such an evaluation because an attorney may try to find reasons other than race to challenge an African–American juror, when race may be his primary factor. *Keeton v. State,* 749 S.W.2d 861, 868 (Tex.Cr.App.1988).

Conversely, once the prosecutor gives a racially neutral explanation that can legally support a judgment in the state's favor, he presents a fact issue that the trial judge can resolve only by assessing the weight and credibility of the evidence. *Tompkins,* 774 S.W.2d at 202. The defendant bears the ultimate burden of proving that the prosecutor exercised the State's peremptory strikes in a discriminatory fashion. *Id.* For instance, in the recent case of *Purkett v. Elem,* —— U.S. ——, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), the prosecutor explained that he had used a strike to eliminate a veniremember because, "He had the longest hair of anybody on the panel by far. He appeared to not be a good juror for that fact ... also he had a moustache and a goatee-type beard ... I don't like the way they look with the way the hair is cut ... the moustaches and the beards look suspicious to me." The court held that the race-neutral explanation tendered by the prosecution may not be persuasive or even plausible as a race-neutral reason, but that it would satisfy the prosecution's burden of articulating non-discriminatory reasons for the strike.

In this case, the prosecutor stated that he struck Pinke from the panel because she was twenty-three years old, unmarried, had a short employment history and was related to a person who had a criminal history. Youth and unemployment are race-neutral reasons for striking a panel member. *Silva v. State,* 800 S.W.2d 912, 914 (Tex.App.—San Antonio 1990, no pet.). Being related to a person with a criminal record is also considered race-neutral. *Wilson v. State,* 769 S.W.2d 682, 684 (Tex.App.—Beaumont 1989, no pet.). The prosecutor explained that Holt, unlike Pinke, had an employment history of over four years with one employer, and had previously served on a jury that had returned a guilty verdict. Although a member of Staple's family had a criminal record and was not eliminated from the panel, he was married, had children, and was employed as a supervisor. Therefore, Staples had other characteristics that mitigated against the State's use of a peremptory strike against him.

Furthermore, we note that after the prosecutor testified and Dennis had an opportunity to cross-examine him, the court asked both parties if they had any further evidence to present. Dennis did not offer additional evidence to meet his burden to show that the State's race-neutral explanations for striking Pinke were in fact pretextual and an improper use of a peremptory strike. *See Whitsey v. State,* 796 S.W.2d 707 (Tex.Cr.App.1989). After reviewing the entire voir dire examination and the evidence presented at the *Batson* hearing, we hold that Dennis failed to prove by a preponderance of the evidence that the State's peremptory challenge of Pinke was for a discriminatory purpose. Point three is overruled.

In point four, Dennis complains that the court violated his state and federal constitutional rights to a fair trial when it admitted a video tape into evidence showing him restrained in handcuffs. The videotape showed Officer Moore placing handcuffs on Dennis and putting him in the patrol car after Moore had arrested him in Athens. The tape further shows the officers looking into Sims' truck. The restraints on Dennis are visible for a very brief period of time and revealed the usual police procedure used by an arresting officer.

Requiring a defendant to wear handcuffs before the jury at trial infringes his constitutional presumption of innocence. *Marquez v. State,* 725 S.W.2d 217, 230 (Tex.Cr.App.1987); *Clark v. State,* 717 S.W.2d 910, 919 (Tex.Cr.App.1986). The only exceptions to the prohibition are where it is shown on the record that there are "exceptional circumstances" or a "manifest need" for such a restraint, *Cline v. State,* 463 S.W.2d 441, 444 (Tex.Cr.App.1971) or where the encounter is away from the courtroom and is "mo-

mentary, inadvertent and fortuitous" in nature. *Clark v. State*, 717 S.W.2d at 919.

Although Dennis was not in front of the jury in handcuffs, the video tape showing him in handcuffs at the crime scene allowed the jury to view him restrained. *See Mouton v. State*, 155 Tex.Crim. 450, 235 S.W.2d 645 (1951). The scene of the crime may properly be shown to the jury as evidence, but the State must also observe the rule that the defendant be brought before the jury "unfettered". *Lucas v. State*, 791 S.W.2d 35, 38 (Tex.Cr.App.1989). The record must reflect "good and sufficient reason" for showing the scene of the defendant in restraints. *Id.*

In *Lucas*, the Court of Criminal Appeals considered a similar situation in which the defendant appeared to be handcuffed during a videotaped confession. The Court held that the trial court erred when it admitted the portion of the videotape showing the defendant in handcuffs. *Id.*, at 56. Although the Court agreed that in some situations it was both necessary and practical to handcuff a defendant while on the side of a busy roadway, error could occur in such a situation because of the visual impact that a restrained defendant has on the mind of the jury. *Id.* However, a finding of error does not necessarily mandate reversal "unless [the court finds] "injury" or "prejudice." *Id.* TEX.R.APP.P. 81(b)(2).

In this case, the trial court could have reasonably found that it was necessary and practical to handcuff Dennis while on the side of the highway in light of the crime for which he had been arrested. *See Lucas*, 791 S.W.2d at 56. Moreover, the time that restraints are visible on Dennis is very short and the videotape indicates no more than the police used a procedure they customarily use at a crime scene. Even if the court erred when it admitted the videotape into evidence, the error was harmless. During Dennis' testimony, he described to the jury the manner in which he was handcuffed when Officer Moore arrested him. Furthermore, Officer Moore's testimony detailing Dennis' arrest was admitted into evidence without objection. Accordingly, Dennis' fourth point is overruled.

In point five, Dennis contends that the court erred when it violated TEX.R.CRIM. EVID. 410 and allowed the State to impeach his testimony with statements that he had made during a plea in federal court. TEX. R.CRIM.EVID. 410. In the present case, it appears that the federal court plea is now a final conviction. The statements that Dennis made during his plea in federal court varied from the statements that he made in the trial of this case. Although Dennis denied that he had seen McGee's gun before McGee got out of the Cadillac and went to Robinson's truck, he stated in a sworn federal court plea that he was aware that McGee had the gun. Dennis' attorney objected to the State's questioning Dennis concerning the plea because Dennis had not been sentenced in federal court and he could have withdrawn his plea at the time of trial in this case. The court overruled Dennis' objections because the statements that Dennis had made during his plea in federal court arose out of the same offense.

Dennis argues on appeal that Rule 410 is controlling. Rule 410 provides, in part, that: "any statement made in the course of any proceedings under FED.R.CRIM.P. 11 or comparable state procedure regarding a plea of guilty or *nolo contendere*," which was later withdrawn," ... is inadmissible. TEX. R.CRIM.EVID. 410. Appellant also quotes *Childs v. State*, 837 S.W.2d 822, 824 (Tex. App.—San Antonio 1992, writ ref'd), in which the court found that "a guilty plea that has been withdrawn is not admissible in evidence."

Dennis correctly states the law but his reasoning is misplaced in the present case. First, he did not offer any evidence that he had withdrawn his guilty plea. Furthermore, it appears from the record that the jury only knew that his statements were made under oath, to an Assistant United States Attorney. Dennis was not asked by the prosecutor if he was charged with a federal crime or if he had pled guilty to an offense. Dennis was merely asked to clarify prior inconsistent statements that he had made under oath, which went to the credibility of his defense of duress. We find that

there was no error in allowing the questions in the form and context in which they were asked. Point of error number five is overruled.

The judgment of the trial court is **affirmed.**