NO. 12-01-00135-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


DINARIO JONES,
§
 APPEAL FROM THE SEVENTH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 SMITH COUNTY, TEXAS

 

 Dinario Jones ("Appellant") appeals his conviction for arson resulting in death, for which
Appellant was sentenced to imprisonment for seventy years. Appellant raises four issues on appeal. 
We affirm.


Background

 Appellant confessed to setting fire to Beth Little's ("Little") house after he had burgled it. 
In his confession, Appellant stated that he set fire to a bed sheet to conceal the burglary, but did not
know if the fire burned the house because it was a small fire when he left the scene. Ultimately, the
fire spread and the resulting smoke killed Little's neighbor, Shelly Haynes, and her daughter, Hanna
Haynes. (1)

 Appellant pleaded "not guilty" and the matter proceeded to voir dire. During voir dire, the
State of Texas (the "State") struck three African American jurors. Appellant made a Batson (2)
motion, arguing that the State did not have a race-neutral reason for striking jurors Javita Wash
("Wash"), Brandi West ("West") and Shane Leaver ("Leaver"). The State put on the testimony of
District Attorney Jack Skeen ("Skeen"), who explained that Wash had been struck because she was
young (twenty-five years old), single, and had only been working for three months. Skeen also
testified that he was told by an assistant that Wash had paid attention to the defendant's attorney, but
had failed to pay attention to Skeen's voir dire examination. Skeen also testified that West and
Leaver were struck for their young age and their short period of employment. Skeen further testified
that one juror had not been struck, even though she was only twenty-nine years old, because she had
worked for the City of Tyler for two and one-half years and then for her current employer for one
and one-half years. Assistant District Attorney Deborah Pullum ("Pullum") testified that she had
observed the jurors during voir dire, taken notes as to their attentiveness and observed Wash paying
attention to the defendant's attorney, but not to Skeen during voir dire examination. Appellant cross-examined each of these witnesses.

 Prior to trial, Appellant filed a motion in limine seeking to limit introduction of evidence that
the fire had resulted in the death of Hanna and Shelly Haynes. The State argued that evidence that
the fire had resulted in death was what distinguished first degree felony arson from second degree
felony arson, and therefore, that death was caused by the fire was relevant to the offense. The trial
court overruled Appellant's motion in limine, Appellant made a running objection to such evidence,
and the matter proceeded to trial.

 In addition to confessing to authorities, Appellant also told his friend, Joshua York ("York"),
that he had burgled Little's home and set the fire to conceal the burglary. During trial, York further
testified that Appellant was upset when he told York about burning Little's house because people
had died in the fire. 

 ATF Agent Larry Smith ("Smith") testified that the fire had started in the bedroom of Little's
home. Until he received a report from Seal Corporation, an accident investigation firm, Smith had
maintained the cause of fire as "undetermined" although he ruled out all accidental causes. Smith
stated that he believed the fire had started above the floor on the bedding. Smith County Fire
Investigator Woody McFarland ("McFarland") likewise carried the cause of the fire as
"undetermined," but ruled out all accidental causes. 

 Appellant called William Glen Bolton ("Bolton"), a fire cause investigator with SEAL
Corporation, to testify on his behalf. Bolton testified that he believed the television started the fire. 
However, in his confession, Appellant stated that he had taken the television set during the burglary.

 Ultimately, the jury found Appellant guilty as charged and found that Appellant used fire as
a deadly weapon during the commission of the offense. The trial court sentenced Appellant to
imprisonment for seventy years and this appeal followed.


Batson Challenge

 In his first issue, Appellant argues that the trial court improperly overruled his Batson
challenge. In order to establish a prima facie case of racial discrimination, three things must be
shown: (1) Appellant is a member of a cognizable racial group; (2) the State used peremptory
challenges to remove members of a minority group from the jury; and (3) these facts, and any other
relevant circumstances, raise an inference that the prosecutor excluded the venirepersons from the
venire because of their race. See Batson v. Kentucky, 476 U.S. at 96, 106 S. Ct. at 1723; Henry v.
State, 729 S.W.2d 732, 734 (Tex. Crim. App. 1987). When the trial court determines that the
appellant has made a prima facie Batson case, the burden shifts to the prosecutor to come forward
with race-neutral reasons for the peremptory strikes. See Shears v. State, 895 S.W.2d 456, 461 (Tex.
App.-Tyler 1995, no pet.). The explanation the State gives justifying the strike does not have to rise
to the level of a challenge for cause, but it must be a clear, specific, and legitimate explanation for
each relevant challenge. See Brooks v. State, 802 S.W.2d 692, 695 (Tex. Crim. App. 1991); see
also Puckett v. Elam, 514 U.S. 765, 768, 115 S. Ct. 1769, 1771, 131 L. Ed. 2d 834 (1995) (the race-neutral explanation articulated by the State need not be persuasive, or even plausible). A reviewing
court is not to concern itself with who served on the jury, but whether the State was racially
motivated in using a peremptory challenge against even one venire member of discernable race. See
Linscomb v. State, 829 S.W.2d 164, 167 (Tex. Crim. App. 1992). The trial judge cannot merely
accept the specific reasons given by the prosecutor at face value, but must consider whether the
prosecutor contrived the racially neutral explanations to avoid admitting acts of discrimination. See
Dennis v. State, 925 S.W.2d 32, 39-40 (Tex. App.-Tyler 1995, pet. ref'd). Once the prosecutor
gives a racially neutral explanation that can legally support a judgment in the State's favor, he
presents a fact issue that the trial judge can resolve only by assessing the weight and credibility of
the evidence. Id. at 40. The defendant bears the ultimate burden of proving that the prosecutor
exercised the State's peremptory strikes in a discriminatory fashion. Id. 

 The standard of review of a trial court's decision and finding as to whether a reason given
by a prosecutor is sufficiently race-neutral is reviewable by a "clearly erroneous" standard. See
Dennis, 925 S.W.2d at 39. Thus, the reviewing court should afford great deference to the findings
of the trial court. See Robinson v. State, 851 S.W.2d 216, 226 (Tex. Crim. App. 1991); Shears, 895
S.W.2d at 461. The record of both the voir dire and hearing will be reviewed in a light most
favorable to the trial court's ruling. See Adanandus v. State, 866 S.W.2d 210, 224 (Tex. Crim. App.
1993). In Keeton v. State, 749 S.W.2d 861, 866 (Tex. Crim. App. 1988), the court of criminal
appeals discussed the following nonexclusive list of factors which weigh against the legitimacy of
a race-neutral explanation: (1) the prosecutor's reason for the peremptory challenge is not related
to the facts of the case; (2) there was a lack of questioning to the challenged juror or a lack of
meaningful questions; (3) there was disparate treatment in that persons with the same or similar
characteristics were not struck; (4) there was disparate examination in that a challenged juror was
questioned so as to evoke a certain response whereas other panel members were not asked the same
question; and (5) the prosecutor gave an explanation based on a group bias where the group trait is
not shown to apply specifically to the challenged juror. See Keeton, 749 S.W.2d at 866. These
factors tend to show that the reasons or explanations given by a prosecutor are merely a sham or a
pretext. See Emerson v. State, 851 S.W.2d 269, 273 (Tex. Crim. App.1993); Keeton, 749 S.W.2d
at 868.

 Citing Fritz v. State, 946 S.W.2d 844 (Tex. Crim. App. 1997), Musick v. State, 862 S.W.2d
794 (Tex. App.-El Paso 1993, pet. ref'd), and Emerson, Appellant argues that the State did not
provide a legally sustainable race-neutral reason for its strikes. In Fritz, the State peremptorily
challenged several venire members who were male and under the age of thirty upon the assumption
that such male venire members would possess a "potential bias" or "common ground" with the
defendant. See Fritz, 946 S.W.2d at 847. The court of criminal appeals held that peremptory strikes
based on gender violated the Equal Protection Clause of the United States Constitution. Id.
(emphasis added). In Musick, the El Paso Court of Appeals concluded that it is not legitimate to
apply an occupation-based, group bias to a prospective juror without inquiring whether the bias
applies specifically to the venireperson, and held that the trial court erred in accepting the purported
rationales for striking the venire persons. See Musick, 862 S.W.2d at 802. Of course, the specific
reason offered by the prosecutor in Musick is different than the instant case, since the prosecutor's
reason in the present case involved length of employment as opposed to type of employment. 
Compare Musick, 862 S.W.2d at 801 with Dennis, 925 S.W.2d at 40. Finally, in Emerson, as in
Musick, the court of criminal appeals dealt with a strike based on type of employment where the
prosecutor attributed a certain bias to a group based on type of employment, without asking any
questions to confirm suspicions of such a bias. See Emerson, 851 S.W.2d at 274 (emphasis added).

 Here, the State contended that Wash, West and Leaver were struck because they were each
young and had only been employed for a short period of time. Both of these reasons have been held
to be sufficiently race-neutral. See Dennis, 925 S.W.2d at 40. Although Skeen testified that one
venire member, who was not stricken, was only twenty-nine years old, he further noted that she had
been employed by the City of Tyler for two and one-half years and that several witnesses were also
employed by the City of Tyler. Appellant cross-examined Skeen and Pullum. However, we find no
remarkable testimony elicited during Appellant's cross-examination of these witnesses so as to cause
us to conclude that the State's reasons given for its strikes were a series of pretexts. As such, we
hold that the trial court's decision to overrule Appellant's Batson motion was not clearly erroneous. 
Appellant's first issue is overruled.


Relevance of Evidence Concerning "Death of Another" 

During Guilt/Innocence Phase of First Degree Arson Trial


 In his second issue, Appellant argues that the trial court committed reversible error by
admitting evidence that the fire in question caused the death of Hanna Haynes because it was not
relevant to any contested issue and the prejudicial effect of the evidence substantially outweighed
its probative value. Appellant sought, by motion in limine, to keep such facts from being mentioned
before the jury, but Appellant's motion in limine was denied on this point.

Motion in Limine - Preservation of Error

 The granting or denying of a motion in limine, without more, preserves nothing for appellate
review. See Gonzales v. State, 685 S.W.2d 47, 51 (Tex. Crim. App. 1985). Rather, a defendant
must object on the proper grounds at the time the evidence is offered at trial and must secure a ruling
from the court. See Gonzales, 685 S.W.2d at 51; Hernandez v. State, 767 S.W.2d 902, 903-04 (Tex.
App.-Corpus Christi 1989, pet. ref'd).

 In the instant case, Appellant's motion in limine concerning evidence related to the fire in
question causing the death of Hanna Haynes was overruled. Appellant argues that he preserved error
by making a running objection at the hearing on his motion in limine. The State argues that the only
objection made by Appellant related to the admission into evidence of a 9-1-1 tape based on hearsay. 
However, the State's contention as to waiver is without merit. Appellant, immediately prior to voir
dire, requested and was granted a running objection to the admission of the evidence of which he
now complains on appeal. Therefore, Appellant has preserved error.

Relevance of "Death of Another"

 A person commits an offense if he starts a fire or causes an explosion with intent to destroy
or damage any habitation knowing that it has located within it property belonging to another. Tex.
Pen. Code. Ann. § 28.02(a)(2)(E) (Vernon Supp. 2003). An offense under this section is a felony
of the second degree, except that the offense is a felony of the first degree if it is shown on the trial
of the offense that bodily injury or death was suffered by any person by reason of the commission
of the offense. Tex. Pen. Code. Ann. § 28.02(d) (Vernon Supp. 2003).

 Appellant argues that evidence that Hanna Haynes died in the fire should have only been
presented during the punishment phase of the trial. Appellant relies on Lozano v. State, 860 S.W.2d
152 (Tex. App.-Austin 1993, pet. ref'd), in which the court of appeals stated, "[a]n arson offense
is complete when the fire is started, not when bodily injury or death occurs as a result," and thus,
"[t]he occurrence of such damage is not an element to be proven." Lozano, 860 S.W.2d at 155. 
Lozano does not, however, specifically support such an argument. Rather, Lozano concerns whether
a fire that results in multiple deaths constitutes multiple counts of arson for double jeopardy
purposes. Id. The facts as recited in Lozano indicate to us that the prosecution in that case did, in
fact, present evidence that death resulted from the fire during the guilt/innocence phase of the trial. 

 We disagree with Appellant that the State could not introduce evidence in the guilt-innocence
phase of trial that the fire allegedly set by Appellant resulted in the death of Hanna Haynes. The
felony punishment criteria set forth in the penal code are specifically predicated on an adjudication
of guilt for felonies measured in various degrees. See, e.g., Tex. Pen. Code Ann. §§ 12.32(a);
12.33(a) (Vernon 1994). For instance, the mandatory five to ninety-nine year punishment range for
a first degree felony is predicated on an individual being adjudged guilty of a felony of the first
degree. See Tex. Pen. Code Ann. § 12.32(a). Moreover, in 1997, four years after the court of
appeals' decision in Lozano, the legislature added the phrase "if it is shown on the trial of the
offense" to the section setting forth the circumstances in which arson is a first degree felony. Tex.
Pen. Code Ann. § 28.02(d) (emphasis added).

 Arson, a second degree felony, is categorized as a first degree felony if it is proven that bodily
injury or death was suffered by any person by reason of the commission of the offense. Id. Given
that the mandatory punishment ranges are specifically predicated on an adjudication of guilt for a
felony measured in terms of degrees and that the legislature, in the years following the Lozano
decision, specifically emphasized that proof of bodily injury or death was to be shown, if at all, "on
the trial of the offense," we conclude that such evidence was necessary for the State to prove in order
to convict Appellant of first degree arson. 

Probative Value of Evidence Versus Its Prejudicial Nature

 Relevant evidence may be excluded if its probative value is substantially outweighed by the
danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of
undue delay, or needless presentation of cumulative evidence. See Tex. R. Evid. 403. Rule 403
"favors admissibility of relevant evidence, and the presumption is that relevant evidence will be
more probative than prejudicial." Miller v. State, 2 S.W.3d 475, 482 (Tex. App.-Tyler 1999, no
pet.) (citing Long v. State, 823 S.W.2d 259, 271 (Tex. Crim. App. 1991)).

 In the case at hand, the probative value of the evidence in question was extremely high. In
fact, as set forth above, it was necessary in order for the State to meet its burden of proof. In
contrast, Appellant's motion in limine was very broad, requesting that the State make no reference
in any manner that a bodily injury or death occurred as a result of the offense of arson. Given that
the penal code specifically provides that arson is a first degree felony if it is proven that "bodily
injury or death was suffered by any person by reason of the commission of the offense[,]" and
considering the great breadth of Appellant's objection to all evidence that a bodily injury or death
occurred as a result of the offense of arson, Appellant argues, in effect, that the very type evidence
that is statutorily required is more prejudicial than probative. We cannot agree. We hold that the
trial court did not err in impliedly overruling Appellant's running objection to the admission of any
and all evidence that a bodily injury or death occurred as a result of the offense of arson. Appellant's
second issue is overruled.


Evidentiary Sufficiency

 In his third and fourth issues, Appellant contends that the evidence is both legally and
factually insufficient to support the jury's verdict. Legal sufficiency is the constitutional minimum
required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. 
See Jackson v. Virginia, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-787, 61 L. Ed. 2d 560 (1979);
see also Escobedo v. State, 6 S.W.3d 1, 6 (Tex. App.- San Antonio 1999, no pet.). The standard
for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. See Jackson, 443 U.S. at 320, 99 S.
Ct. at 2789; see also Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence
is examined in the light most favorable to the jury's verdict. See Jackson, 443 U.S. at 320, 99 S. Ct.
at 2789; Johnson, 871 S.W.2d at 186. A successful legal sufficiency challenge will result in
rendition of an acquittal by the reviewing court. See Tibbs v. Florida, 457 U.S. 31, 41-42, 102 S.
Ct. 2211, 2217-218, 72 L. Ed. 2d 652 (1982).

 On the other hand, in considering factual sufficiency, an appellate court must first assume
that the evidence is legally sufficient under the Jackson standard. See Clewis v. State, 922 S.W.2d
126, 134 (Tex. Crim. App. 1996). The appellate court then considers all of the evidence in the
record related to Appellant's sufficiency challenge, not just the evidence which supports the verdict. 
The appellate court reviews the evidence weighed by the jury which tends to prove the existence of
the elemental fact in dispute, and compares it to the evidence which tends to disprove that fact. 
Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). The court is authorized to
disagree with the jury's determination, even if probative evidence exists which supports the verdict. 
Clewis, 922 S.W.2d at 133. However, factual sufficiency review must be appropriately deferential
so as to avoid the appellate court's substituting its own judgment for that of the fact finder. The
court's evaluation should not substantially intrude upon the jury's role as the sole judge of the weight
and credibility of witness testimony. Santellan, 939 S.W.2d at 164. Where there is conflicting
evidence, the jury's verdict on such matters is generally regarded as conclusive. See VanZandt v.
State, 932 S.W.2d 88, 96 (Tex. App.- El Paso 1996, pet. ref'd). Ultimately, a reviewing court must
ask whether a neutral review of all the evidence, both for and against the finding, demonstrates that
the proof of guilt is so obviously weak as to undermine our confidence in the jury's determination,
or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. 
Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). A verdict will be set aside "only if the
evidence supporting guilt is so obviously weak, or the contrary evidence so overwhelmingly
outweighs the supporting evidence, as to render the conviction clearly wrong and manifestly unjust." 
Ortiz v. State, No. 73692, 2002 WL 31116634, at * 5 (Tex. Crim. App. Sept. 25, 2002).

 Moreover, in criminal matters, the sufficiency of the evidence is measured against the offense
as defined by a hypothetically correct jury charge. See Malik v. State, 953 S.W.2d 234, 240 (Tex.
Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized
by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily
restrict the State's theories of liability, and adequately describes the particular offense for which the
defendant is tried. Id. 

 In the instant case, Appellant was convicted of first degree arson. As such, to successfully
prosecute its case against Appellant, the State was required to prove that Appellant, with the intent
to damage or destroy a habitation located in Tyler, Smith County, Texas, intentionally or knowingly
started a fire in said habitation by setting a bed on fire with a lighter, knowing said habitation had
located within it property belonging to another, and as a result of said fire, Hanna Haynes suffered
death. (3) See Tex. Pen. Code Ann. § 28.02 (Vernon Supp. 2003). We initially note that Appellant
confessed to setting fire to Little's house after he had burgled it and, in his confession, stated that
he set fire to a bed sheet to conceal the burglary, but did not know if the fire burned the house
because it was a small fire when he left the scene. The record further reflects that Little's house was
located in Tyler, Smith County, Texas and that the fire spread and the resulting smoke killed Little's
neighbor, Shelly Haynes, and her daughter, Hanna Haynes.

 However, Appellant argues that apart from his confession, the State cannot prove the
necessary elements of arson. Appellant relies primarily on Adrian v. State, 587 S.W.2d 733 (Tex.
Crim. App. 1979), in which the court of criminal appeals stated that there was no evidence, apart
from defendant's confession, that a fire was deliberately set by someone. Id. at 735. The decision
of the court in Adrian was based primarily on two rules of law: (1) the extrajudicial confession alone
is insufficient to sustain a conviction, see Brown v. State, 576 S.W.2d 36, 42 (Tex. Crim. App.
1978); and (2) proof merely that a building burned is not sufficient to establish the essential element
of willful intent required for arson. See Massey v. State, 226 S.W.2d 856, 859 (Tex. Crim. App.
1950); see also Adrian, 587 S.W.2d at 734. However, circumstantial evidence may be sufficient to
establish the corpus delicti of arson where the defendant has confessed. See McCarty v. State, 688
S.W.2d 675, 676 (Tex. Civ. App.-Texarkana 1985, no pet.). 

 Corroboration requires only some proof tending to show that the crime was committed. See
Fisher v. State, 851 S.W.2d 298, 302-03 (Tex. Crim. App. 1993). "[T]he essential purpose of the
corroboration requirement is to assure that no person be convicted without some independent
evidence showing that the very crime to which he confessed was actually committed." Gribble v.
State, 808 S.W.2d 65, 71 (Tex. Crim. App. 1990). Here, Smith testified that the fire started in the
bedroom. In fact, Smith testified that the fire probably started above the floor in the bedding. 
McFarland also testified that although he carried the cause of the fire as undetermined, he ruled out
all accidental causes. Moreover, York testified that Appellant told him that he had set fire to the
house to cover the burglary and was upset because people had died in the fire. We conclude that
Appellant's confession is sufficiently corroborated. Moreover, considering such evidence in
conjunction with Appellant's confession, we hold that the evidence is legally sufficient to support
Appellant's conviction. 

 In support of his factual insufficiency argument, Appellant notes several inconsistencies in
his statement to police. However, these inconsistencies are not germane to the issue of whether
Appellant intentionally started the fire in question. Appellant also notes that Bolton testified that he
believed the television started the fire. However, in his confession, Appellant stated that he had
taken the television set during the burglary. We iterate that our evaluation should not substantially
intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony, see
Santellan, 939 S.W.2d at 164, and that where there is conflicting evidence, the jury's verdict on such
matters is generally regarded as conclusive. See VanZandt v. State, 932 S.W.2d at 96. It follows
that the jury was entitled to find that Smith and McFarland were more credible witnesses than
Bolton. See Thompson v. State, 54 S.W.3d 88, 97 (Tex. App.-Tyler 2001, no pet.). Our review of
the record as a whole does not uncover any evidence so as to cause us to conclude that the proof of
guilt is so obviously weak as to undermine our confidence in the jury's verdict, nor that the proof of
guilt, although adequate if taken alone, is greatly outweighed by contrary proof. Therefore, we hold
that the evidence was factually sufficient to support the jury's verdict. Appellant's issues three and
four are overruled. 

 Accordingly, the judgment of the trial court is affirmed.



 SAM GRIFFITH 

 Justice



Opinion delivered December 31, 2002.

Panel consisted of Worthen, J., and Griffith, J.

Gohmert, Jr., C.J., not participating














(DO NOT PUBLISH)
1. Appellant was also convicted for murder based on these same facts in cause number 007-0936-00. We
affirmed Appellant's murder conviction in Jones v. State, No. 12-01-00196-CR, 2002 WL 1899981 (Tex.
App.-Tyler August 14, 2002).


2. See Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).
3. Appellant does not challenge the jury's finding that he exhibited or used fire as a deadly weapon and, as
such, we do not address such an issue in this opinion.